IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **CRYSTAL MANNING as next friend of L.D., a minor, MARIAHLEE MANSAW as next friend of P.M., a minor, MELISSA HOLLINS as next friend of D.H., a minor, as wrongful death beneficiaries of BILLIE DAVIS, deceased, and RUBY LEE DAVIS, individually and as representative of the estate of BILLIE DAVIS, deceased,** *Plaintiffs* § § § § § § § § § § § § § § § § § | Case No. 4:23-cv-01115 |
| **v.** | |
| **LASALLE CORRECTIONS LLC d/b/a LASALLE CORRECTIONAL CENTER,** *Defendants* | |

**PLAINTIFFS' RESPONSE TO DEFENDANT LASALLE MANAGEMENT COMPANY LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

COME NOW, Plaintiffs, CRYSTAL MANNING as next friend of L.D., a minor, MARIAHLEE MANSAW as next friend of P.M., a minor, MELISSA HOLLINS as next friend of D.H., a minor, as wrongful death beneficiaries of BILLIE DAVIS, deceased, and RUBY LEE DAVIS, individually and as representative of the estate of BILLIE DAVIS, deceased, by and through counsel, and pursuant to the Federal Rules of Civil Procedure, hereby file this Response to Defendant LaSalle Management Company LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint, and in support thereof, would respectfully show as follows:

**OBJECTIONS TO DEFENDANT'S MOTION**

LaSalle Management Company, LLC ("LaSalle Management") submitted three declarations in support of its motion to dismiss—Sharon Bennett, Tim Kurpiewski, and Rodney Cooper. The only declaration that addresses whether LaSalle Management entered into an

agreement with Harris County is the Kurpiewski Declaration. In paragraphs 5 through 8, Mr. Kurpiewski asserts that LaSalle Management is not a party to the agreement with Harris County. (DE 120, p. 8-9). Yet, the agreement itself states that it is between Harris County and Southwestern Correctional LLC d/b/a LaSalle Southwest Corrections and LaSalle Management Company and LaSalle Corrections who are collectively defined as "Contractor." (DE 61-1, p. 3). Contrary to what Kurpiewski claims in his declaration, LaSalle Management Company is identified as a party to the agreement. Presumably, Kurpiewski makes this statement because the name in the contract does not include "LLC" after "LaSalle Management Company."

A motion to dismiss on personal jurisdiction grounds is akin to a motion for summary judgment. In the context of summary judgment motions, a party's affidavit, unsupported by any other evidence in the record, fails to raise a triable issue of fact when it conflicts with uncontroverted documentary evidence. *Christiana Bank & Trust Co. v. Dalton*, No. 06-CV-3206, 2009 U.S. Dist. LEXIS 108172, 2009 WL 4016507, at *4 (E.D.N.Y. Nov. 17, 2009) ("a self-serving, contradictory affidavit fails to raise a triable issue of fact when it conflicts with documentary evidence"); *see also Henderson v. Wells Fargo Bank, N.A.*, No. 3:13-cv-378, 2017 U.S. Dist. LEXIS 24082, 2017 WL 731780 (D. Conn. Feb. 2, 2017); *Dzanoucakis v. Chase Manhattan Bank, USA*, No. 06-cv-5673, 2009 U.S. Dist. LEXIS 27299, 2009 WL 910691 at *8 (E.D.N.Y. Mar. 31, 2009) (where the "uncontroverted record clearly supports a [particular] finding," then "[p]laintiff's own self-serving declaration to the contrary is insufficient, under the circumstances, to raise a triable issue of fact").

Here, Kurpiewski's declaration conflicts with the Harris County agreement in two ways. First, Kurpiewski claims that LaSalle Management Company is not a party to the contract when the contract identifies that company even though the designation "LLC" is not listed. Second,

Kurpiewski claims that the only entity intended to be included in the contract was Southwestern Correctional, LLC. That statement is directly contradicted by the face of the agreement. And his declaration contradicts his own signature where he signed on behalf of three entities including LaSalle Management Company. (DE 61-1, p. 32).

Plaintiffs object to the Kurpiewski Declaration based upon the fact that it is submitted by a party, and it contradicts the record evidence. Plaintiffs request that the Court strike this declaration. Alternatively, Plaintiffs requests the opportunity to conduct appropriate jurisdictional discovery concerning this Defendant.

## FACTUAL BACKGROUND

In February 2022, Mr. Davis was arrested and incarcerated in a Harris County jail located in Houston, Texas for a relatively minor charge. (DE 61, ¶ 3.1). Due to overcrowding, he was transferred to LaSalle Correctional Center,[1] a private jail facility located in La Salle Parish, Louisiana.[2] (DE 61, ¶ 3.1). The transfer between Harris County and La Salle Parish was pursuant to an agreement between Harris County and Southwestern Correctional, LLC d/b/a LaSalle Southwest Corrections and LaSalle Management Company and LaSalle Corrections, LLC. (DE 61, ¶ 3.1; Exhibit A, DE 61-1, p. 3). The Agreement recognizes that LaSalle Corrections, is a limited liability corporation organized under the laws of Louisiana but operating under the laws of the State of Texas. *Id*.

While at LaSalle Correctional Center, Mr. Davis received serious and life-threatening injuries. (DE 61, ¶ 3.2; Exhibit B DE 61-2, p. 18). On March 1, 2022, Davis was found unresponsive in an administrative segregation cell. (DE 61, ¶ 3.1; Exhibit B DE 61-2, p. 9). Mr.

---

[1] *See* (DE 61-2) Exhibit B, Hardtner Medical Center Medical Report, p. 7 (Warden confirms to hospital that patient was transferred to the LaSalle facility from Texas as an inmate).
[2] https://www.louisiana.gov/local-louisiana/lasalle-parish

Davis was in an altercation with prison guards at approximately 9:20 a.m. *Id.* After the altercation, Mr. Davis allegedly went to medical (presumably for treatment of his injuries caused by the altercation with the guards) at 9:30 a.m. *Id.* During the altercation, Mr. Davis was punched and "lost some teeth.[3]" *Id.* While Mr. Davis was waiting to be seen by the nurse practitioner, he was found not breathing at 10:00 a.m. (DE 61-2, p. 9). CPR was administered and Mr. Davis received two doses of epinephrine. *See id.* He was transferred to the hospital and arrived there at 10:38 a.m. where CPR continued.[4] (DE 61-2, p. 15). According to the Progress Notes, Mr. Davis had been down for thirty minutes after blunt head trauma. (DE 61-2, p. 15). Healthcare workers noted that Mr. Davis was bleeding from his mouth, had multiple abrasions to his hands and lower extremities, and suffered blunt force head trauma. (DE 61-2, p. 18). Mr. Davis died from the injuries he sustained at LaSalle Correctional Center and was pronounced dead at 10:47 a.m. (DE 61-2, p. 24).

After Mr. Davis's death, the funeral home contacted the family and reported suspicious bruises (consistent with the observations by the medical providers) and other physical anomalies to Mr. Davis's body. (DE 61, ¶ 3.2). The funeral home personnel also reported that Mr. Davis had multiple broken and missing teeth that were in his mouth at the time of his cardiac arrest. *Id.* The jail provided no explanation for Mr. Davis's death. *Id.*

Mr. Davis suffered extreme abuse, excessive use of force, beatings, neglect, and ultimately death while in custody at LaSalle Correctional Center. (DE 61, ¶ 3.4). LaSalle Correctional Center has been the subject of numerous lawsuits and investigations as the result of the culture Defendant has created. (DE 61, ¶ 3.7). The press reports that there have been numerous deaths, beatings, and

---

[3] Upon presentation to the hospital, it was noted Mr. Davis was missing front upper teeth and suffered fractured teeth. Additionally, he had a contusion to his forehead and had the imprint of an object on his forehead which was noted as blunt trauma. *See* Exhibit B, Hardtner Medical Center Medical Report, p. 13.
[4] Mr. Davis presented to the hospital while restrained in his unconscious state with handcuffs in front of his body binding his hands as well as bindings to his feet which were handcuffed bilaterally to one another. To treat Mr. Davis, the handcuffs had to be removed in the trauma room. *See id.*, p. 17.

other violations at their facilities and others controlled by LaSalle, yet no changes have been made. *Id.*

The same year Mr. Davis was killed at LaSalle Correctional Center, the publication Louisiana Voice reported that LaSalle Corrections was the subject of no less than nine stories of wrongful death lawsuits, class action lawsuits over forced hysterectomies, wrongful injury lawsuits, violations of Department of Labor requirements, falsification of records, inadequate employee training, among others.[5] (DE 61, ¶ 3.7-3.10).

Notable incidents in LaSalle operated facilities include a January 23, 2014, incident in which an inmate was found unresponsive at the Richwood Correctional Center, one of Defendant LaSalle's facilities.[6] The inmate had complained of chest discomfort, headaches, and pain for about a month before his death, and that LaSalle failed to provide the inmate with timely and adequate medical care and treatment. On the day that Williams was found unconscious, he was pronounced dead upon his transfer to University Health Conway in Monroe. (DE 61, ¶ 3.8).

Another incident occurred on July 17, 2018, when an inmate at the Bi-State Justice Building in Texarkana alleged he was beaten, abused, and neglected by LaSalle staff so severely that he suffered acute renal failure, severe dehydration, blunt force trauma causing ischemic colitis, facial fractures, rib fractures, muscle loss, sepsis, pneumonia, blood clots, and hyperkalemia.[7] (DE 61, ¶ 3.9).

In another lawsuit that originated from the Bi-State Justice Building, LaSalle was found to have deprived a pretrial detainee of his prescription medications, denied him adequate medical care, used constitutionally excessive force against him (rather than providing him with needed

---

[5] https://louisianavoice.com/2021/02/07/lasalle-corrections-already-pounded-in-several-lawsuits-hit-by-one-400k-settlement-and-another-lawsuit-so-far-this-year/
[6] *Williams v. LaSalle Correctional Center L.L.C.*, 217 So.3d 1219 (La. Ct. App. 2017).
[7] *Jones v. Southwestern Correctional, LLC, et al,* No. 5:2019-cv-001042019 (E.D. Tex. Aug. 15, 2019)

medical care), ignored his ongoing serious medical needs, including his obvious acute respiratory distress, failed to monitor him despite his severe and life-threatening medical condition, forced him to endure extreme and needless pain and suffering, and caused his death. [8]

Another lawsuit against LaSalle alleged that an inmate was placed in an isolation cell with a "problematic inmate".[9] The two were involved in an altercation that lasted 18 minutes, and the victim was last seen alive on video at 5:22 pm before his seemingly lifeless body was dragged from the cell at 6:08 pm. The inmate was transported to a local hospital where he was later pronounced dead. These are a few examples highlighting a history and culture of abuse, neglect, beatings, and even killings at LaSalle operated facilities. (DE 61, ¶ 3.10).

## ARGUMENTS AND AUTHORITIES

**1. Defendant's motion to dismiss for lack of personal jurisdiction should be denied.**

LaSalle Management contends that it is not subject to the personal jurisdiction of this Court. The motion should be denied because the Court has specific jurisdiction over LaSalle Management for this case.

Specific jurisdiction arises when (1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The Texas long-arm statute permits the exercise of jurisdiction over a nonresident doing business in the state if the nonresident "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." Tex. Civ. Prac. & Rem Code § 17.042. Section 17.042 provides:

---

[8] *Sabbie v. Sw. Corr. LLC*, No. 5:17-CV-113-RWS-CMC, 2017 U.S. Dist. LEXIS 197266, 2017 WL 5907865, at *7 (E.D. Tex. Nov. 6, 2017, report and recommendation adopted, No. 5:17-CV-113-RWS-CMC, 2017 U.S. Dist. LEXIS 197081, 2017 WL 5905270 (E.D. Tex. Nov. 30, 2017).
[9] *White v. LaSalle Corr., Inc.*, No. 16-1405, 2017 U.S. Dist. LEXIS 40971 (W.D. La. March 20, 2017).

Sec. 17.042.  ACTS CONSTITUTING BUSINESS IN THIS STATE.  In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

(1)  contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2)  commits a tort in whole or in part in this state; or

(3)  recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

"[T]he Texas long-arm statute's broad doing-business language 'allows the statute to reach as far as the federal constitutional requirements of due process will allow.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337-38 (Tex. 2009). One of the ways to establish purposeful availment is to show the out-of-state defendant entered a contract with the purpose of getting profitable business from the forum state. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 153-54 (Tex. 2013) ("Defendants' contacts were purposeful and substantial because their activity 'was aimed at getting extensive business in or from the forum state.'" quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005)). Therefore, if the Louisiana Defendants entered into the agreement with Harris County, purposeful availment is established.

Kurpiewski, the CFO of Southwest Correctional, LLC, contends that LaSalle Management Company, LLC, is not a party to the contract with Harris County. (DE 120, p. 8-9). The contract identifies the "Contractor" as "Southwestern Correctional, LLC d/b/a LaSalle Southwest Corrections and LaSalle Management Company and LaSalle Corrections ('Contractor'), a limited liability corporation [*sic*] organized under the laws of Louisiana and operating under the laws of

the State of Texas For [*sic*] this Agreement." (DE 61-1, p. 3). Who is the Agreement referring to when it identifies LaSalle Management Company.

The agreement lists the duties of the Contractor. The "Contractor" agrees to "provide detention, care, and transport of certain County inmates . . .." *Id.* at ¶ 1), A). The Contractor "warrants and represents it is registered with the Texas Secretary of State to transact business in Texas." *Id.* at ¶ 1), K). The Contractor is responsible for providing medical services for the inmates. *Id.* at ¶ 3. The Contractor is required perform criminal background checks in accordance Tex. Gov. Code §§ 411.135and 411,136. *Id.* at ¶ 14. The agreement is governed by Texas law and the exclusive venue for any action related to the agreement is Houston. *Id.* at ¶ 19. Finally, the agreement provides that LaSalle Correctional Center is one of the facilities identified in the "Contractors Statement of Work." (DE 61-1, p. 35).

Plaintiffs contend that the LaSalle Management is a party to the Harris County Agreement. If so, this LaSalle Management purposefully availed itself to Texas law by contracting with Harris County to gain a profit. *Moncrief Oil Int'l, Inc*, 414 S.W.3d at 153-54. And Plaintiffs' claims arise from and relate to the LaSalle Management's contacts with Harris County through its performance of the contract. The Supreme Court explained causation does not require a causal link between the contacts and the claims, explaining that a "causation-only approach finds no support in this Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities." *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1022 (2021). The Court explained:

> None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit 'arise out of or relate to the defendant's contacts with the forum. The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing.

*Ford,* 141 S. Ct. at 1026 (internal citation omitted).

In this case, Plaintiffs' claims both arise from and relate to LaSalle Management's contacts with Texas. Absent the agreement between LaSalle Management and Harris County, Mr. Davis would have never been transported to the Louisiana jail where he lost his life.

And exercising personal jurisdiction over LaSalle Management would not offend traditional notions of fair play. If the plaintiff can satisfy minimum contacts, "the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). The factors for making this determination are: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

Here, LaSalle Management will be unable to demonstrate that litigating in Texas constitutes an unreasonable burden. The State of Texas and Harris County have a strong interest in seeing that its inmates are treated in accordance with the Texas and United States Constitutions. Plaintiffs likewise have a strong interest in vindicating the Constitutional rights of their loved one. And the interest of court administration favors finding fairness because otherwise, the case will be separately resolved from this one. In cases where minimum contacts are established, it would be a rare situation to find that exercising jurisdiction is unfair. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994).

Alternatively, the Court could permit Plaintiffs to conduct jurisdictional discovery. If a party moves to dismiss on personal jurisdiction and uses factual evidence, the court should give the plaintiff the opportunity for discovery appropriate to the nature of the motion. *See Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 475 (5th Cir. 1985) ("the

district court correctly decided that the record does not permit it to decide whether it has jurisdiction over [defendant] and ordered further discovery to enable the essential facts to be determined"); *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981). The information needed to rebut the declarations is particularly within the possession of the LaSalle Management.

    2.    **The Court should use its discretion to extend the time for service of process on Defendant.**

Rule 4(m) permits a district court to dismiss a case without prejudice if the plaintiff fails to serve the defendant within 90 days of filing the complaint. Fed. R. Civ. P. 4(m). The trial court "can extend the time for service based on a showing of good cause, or, if the plaintiff lacks good cause, we can extend the time for service based on our discretionary power." *Wright v. Spindletop Films, L.L.C.*, No. 4:10-CV-4549, 2011 U.S. Dist. LEXIS 82882, at *11 (S.D. Tex. 2011) (Ellison, J.).

Plaintiffs concede that they did not serve this Defendant within the time set out in Rule. The legal assistant who was primarily assigned to this case left Webster Vicknair MacLeod shortly after the second amended complaint was filed. Typically, at the firm the legal assistant assigned to the case is tasked with obtaining a summons and seeing that it is served. Although Defense counsel did indicate in several emails that discovery to this Defendant was premature because it had not appeared, Plaintiffs' counsel did not equate that statement with the reality that the Defendant had not been served.

This Defendant has not suffered prejudice because of Plaintiffs' counsel's failure to timely effect service. This Defendant was named in the second amended complaint and is represented by the same counsel as the other LaSalle entitles that were served. Plaintiffs respectfully request that

the time for obtaining service on Defendant to January 22, 2025, when service was completed. (DE 109).

3. **Venue is proper in the Southern District of Texas**.

Defendant contends that Plaintiffs' second amended complaint should be dismissed for improper venue. The facts set forth in the second amended complaint are sufficient to establish venue in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

Plaintiffs' second amended complaint alleges that LaSalle Management is a Louisiana limited liability company doing business in the Southern District of Texas for purposes of profit. (DE 61, ¶ 1.10). Plaintiffs further allege that that LaSalle Management contracted with Harris County to take its inmates and distribute them to private prisons run by the Defendant. (DE 61, ¶ 1.6). Mr. Davis was transported from Harris County to LaSalle Correctional Center where he later died at the hands of the guards employed by the Center. (DE 61, ¶ 1.7).

Plaintiffs assert that LaSalle Management was negligent in several ways and that its negligence led to the death of Mr. Davis. (DE 61, ¶ 4.1-4.4). The contract with Harris County to transport and care for inmates like Mr. Davis was signed by LaSalle Management. (DE 61-1, p. 32). In fact, one individual signed the agreement on behalf of LaSalle Southwest, LaSalle Management and LaSalle Corrections. *Id*. In the agreement, LaSalle Southwest, LaSalle Management Company and LaSalle Corrections, were all identified as the "Contractor" and each agreed to follow all federal, state, local laws, and operate in accordance with the Harris County Sheriff's policies and procedures. (DE 61-1, p. 4). Further, LaSalle Management agreed to "assume the sole responsibility for security and control of prisoners in a professional manner." *Id*.

The "Contractor" also agreed to provide prisoners with medical care as necessary including

"twenty-four (24) hour emergency medical care and emergency evacuation procedures." (DE 61-1, p. 6-8). The "Contractor" also agreed that the agreement would be governed by Texas law and venue in Houston. (DE 61-1, p. 27).

Billie Davis would have never been in a prison in Louisiana absent the agreement between LaSalle Management and Harris County. In Texas, the elements of a cause of action for negligence are (1) a legal duty; (2) a breach of that duty; and (3) damages proximately caused by the breach. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). In this case, LaSalle Southwest's duty to Mr. Davis derives from its agreement with Harris County to assume control over him.

"A substantial part of the events does not mean the single triggering event of a cause of action, but rather looks to the entirety of the claim." *Redi-Mix Sols., Ltd. v. Express Chipping, Inc.*, Civil Action No. 6:16-cv-298-RWS-KNM, 2017 U.S. Dist. LEXIS 221118, at *23 (E.D. Tex. 2017). "If the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so." *In re Space Expl. Techs., Corp.*, 99 F.4th 233, 239 (5th Cir. 2024), quoting *Crowe & Dunlevy, P.C. v. Stidham*, 609 F. Supp. 2d 1211, 1221 (N.D. Okla. 2009), aff'd, 640 F.3d 1140 (10th Cir. 2011).

Defendant's focus on the location of Mr. Davis's death is too narrow. The venue statute contemplates that more than one court could have venue. Here, the Southern District of Texas is a proper venue because a substantial part of the events giving rise to the claims occurred in this district.

4. **Plaintiffs' second amended complaint contains sufficient factual allegations to make their claims against LaSalle Management plausible.**

LaSalle Management also seeks dismissal of Plaintiffs' second amended complaint pursuant to Rule 12(b)(6). A Rule 12(b)(6) motion to dismiss argues that the complaint fails to assert facts that give rise to legal liability of the defendant. Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A*shcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

A district court must accept as true all well-pleaded facts in the complaint and generally should not go outside the complaint. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). However, a district court may consider documents attached to the complaint and may also consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Scanlan*, 343 F.3d at 536.

With respect to the specific allegations in Defendant's motion to dismiss, Plaintiffs admit that they have no claim against LaSalle Management under the Eighth Amendment.

Plaintiffs admit that they have no Fourth Amendment claim against LaSalle Management.

Plaintiffs admit that LaSalle Management may not be held vicariously liable under Section 1983.

As to Defendant's other contentions, Plaintiffs have provided sufficient factual allegations against LaSalle Management with respect to a cause of action for negligence. (DE 61, p. 11). As

13

previously stated, the elements of a cause of action for negligence are (1) a legal duty; (2) a breach of that duty; and (3) damages proximately caused by the breach. *IHS Cedars Treatment Ctr.,* 143 S.W.3d at 798. LaSalle Management owed Mr. Davis a duty of reasonable care by agreeing with Harris County to accept and care for the inmates from the county. Privately managed prison facilities owe a duty of care to the inmates it houses. *Minneci v. Pollard*, 565 U.S. 118, 128-29 (2012) (citing *Salazar v. Collins*, 255 S.W.3d 191, 198-200 (Tex. App.—Waco 2008, no pet.); *Rowland v. Sw. Corr.*, No. 4:20-CV-00847-ALM-CAN, 2021 U.S. Dist. LEXIS 175583, at *30 (E.D. Tex. 2021). Plaintiffs sufficiently allege facts supporting a duty owed to Mr. Davis based upon LaSalle Management's agreement with Harris County. (See DE 61-1).

As previously stated, the elements of a cause of action for negligence are (1) a legal duty; (2) a breach of that duty; and (3) damages proximately caused by the breach. *IHS Cedars Treatment Ctr.,* 143 S.W.3d at 798. LaSalle Management owed Mr. Davis a duty of reasonable care by agreeing with Harris County to accept inmates from the county. Privately managed prison facilities owe a duty of care to the inmates it houses. *Minneci v. Pollard*, 565 U.S. 118, 128-29 (2012) (citing *Salazar v. Collins*, 255 S.W.3d 191, 198-200 (Tex. App.—Waco 2008, no pet.); *Rowland v. Sw. Corr.*, No. 4:20-CV-00847-ALM-CAN, 2021 U.S. Dist. LEXIS 175583, at *30 (E.D. Tex. 2021). Plaintiffs sufficiently allege facts supporting a duty owed to Mr. Davis based upon its agreement with Harris County. (See DE 61-1).

Plaintiffs allege sufficient facts to put LaSalle Management on notice of the negligence claims against it. The second amended complaint alleges that Mr. Davis was in an altercation with prison guards, those guards knocked out his teeth, applied blunt force trauma to his head, stuck him in an isolation cell, and he died. (DE 61, ¶ 3.1-3.2, 3.11, 4.3). And Plaintiffs allege that the negligence of LaSalle Management was a proximate cause of Mr. Davis's death.

LaSalle Management argues that Plaintiffs have impermissibly engaged in group pleading. But "plaintiffs are permitted under federal procedure to allege that more than one defendant (i.e., a group of named defendants) committed the same alleged act." *ATC Media, LLC v. Michaels Stores, Inc.*, No. 3:22-cv-1416-N, 2023 U.S. Dist. LEXIS 137608, 2023 WL 5058837, at *2 (N.D. Tex. Aug. 7, 2023). Mutual ownership or control are facts that describe the relationship between the Defendants which is a factor that court consider when determining if the complaint adequately differentiates between defendants. *See VTX Communs., LLC v. AT&T Inc.*, No. 7:19-CV-00269, 2020 U.S. Dist. LEXIS 138286, 2020 WL 4465968, at *10 (S.D. Tex. Aug. 4, 2020) (holding that it was permissible to group multiple AT&T defendants together and stating that, "[e]Ven if Plaintiffs do not separately plead which Defendant is tied to each allegation, Plaintiffs have provided some facts to show the relationship of these Defendants to the [partnerships], [and] to one another"); *ACQIS Ltd. Liab. Co. v. Lenovo Grp. Ltd.*, No. 6:20-CV-00967-ADA, 2022 U.S. Dist. LEXIS 122565, at *9 (W.D. Tex. 2022).

Plaintiffs' second amended complaint asserts that LaSalle Southwest, LaSalle Corrections, LLC,[10] LaSalle Correctional Center, LLC, and LaSalle Management Company, LLC, working in conjunction under the same corporate veil, are responsible for the death of Mr. Davis because the failures were not possible without the participation of each Defendant. (DE 61, ¶ 3.13). In addition, LaSalle Southwest, LaSalle Management Company and LaSalle Corrections were all signatories to the agreement with Harris County. Each one of them promised to comply with the agreement with respect to inmates originating from Harris County. (DE 61-1, p. 3). Plaintiffs have alleged sufficient facts, at this stage, to show that their negligence claim against LaSalle Management is plausible.

---

[10] Plaintiffs agreed to dismiss LaSalle Corrections, LLC based upon Defendants' representations as to its business.

LaSalle Management contends that Plaintiffs have not stated sufficient facts to show that a Section 1983 claim for failure to train is plausible. "[T]o establish municipal liability under § 1983, [Plaintiff] must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of his constitutional rights." *Howell v. Harris County*, No. 4:24-CV-468, 2024 U.S. Dist. LEXIS 137088, at *7 (S.D. Tex. August 2, 2024) (Ellison, J.). Section "1983 plaintiffs can establish the first element by pointing to a 'persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id.* at *7-8, (quoting *Inaimi v. Harris Cnty. Tex.*, No. 4:21-CV-01832, 2022 U.S. Dist. LEXIS 55127, 2022 WL 901556, at *2 (S.D. Tex. Mar. 25, 2022) (Ellison, J.) (quoting *Hicks-Fields v. Harris County*, 860 F.3d 803, 810-11 (5th Cir. 2017)). A plausible pattern must be similar and specific. *Id*. at *11. The standards applicable to municipal liability under § 1983 are also applicable to determining the liability of a private company performing a government function. *Sabbie v. Southwestern Correctional, LLC*, Case no. 5:17cv113-RWS-CMC, 2019 U.S. Dist. LEXIS 214463, at *169-170 (E.D. Tex. March 6, 2019) (*citations omitted*).

Defendant contends that the Court's analysis of the actions of the LaSalle jails other than the LaSalle Center should be disregarded. In *Mathis v. Southwestern Corr., LLC*, the court recognized that LaSalle had multiple instances of failing to provide adequate medical care at the facility in question, but the Court also pointed out that such conduct occurred in "other correctional facilities run by the Corporate Defendants." 2021 U.S. Dis. LEXIS 172515, *22, 2021 WL 4129123 (E.D. Tex. Sept. 10. 2021). Further, the Court stated that LaSalle was involved in "high-profile lawsuits about which the Corporate Defendants [LaSalle] were acutely aware, including those that were covered by local and national media outlets, putting company policymakers on

16

notice that the Bi-State Jail and **other LaSalle-run** facilities were engaging in practices that endangered the lives of inmates." *Id*. This conduct essentially establishes a de facto policy (i.e., pattern, practice or custom) of unconstitutional misconduct. Plaintiffs have documented several other cases involving these Defendants just as the Plaintiffs did in *Mathis*. The allegations allow this Court to draw the reasonable inference that the policies and customs of the "profit driven practices of LaSalle Management"[11] led to Defendants violating the constitutional rights of Mr. Davis. Constructive knowledge can be attributed to a policymaker "on the ground that [he] would have known of the violations if [he] had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion." *Moore v. LaSalle Mgmt. Co*., 41 F.4th 493, 511 (5th Cir. 2022). Plaintiffs' allegations are sufficient to allege a failure to train policy of LaSalle Management which is plausible on its face.

Finally, LaSalle Management contends that Plaintiffs fail to state a valid gross negligence claim. However, a request for punitive damages is not a cause of action, it is a remedy. *Quezada v. MDS Trucking V Inc.*, No. EP-23-CV-00434-KC, 2024 U.S. Dist. LEXIS 131684, at *9 (W.D. Tex. 2024) (Gross negligence is not an independent cause of action.). A request for relief is not considered part of the claim for purposes of Rule 8(a)(2)'s "short and plain statement of the *claim*." *Id*. at * 11-12 (emphasis added). On the other hand, Rule 8(a)(3) provides that a complaint must contain a demand for relief. *Id*. "Rule 8(a)(3)'s pleading requirement, unlike the plausibility standard, 'is not arduous—'any concise statement identifying the remedies and the parties against whom relief is sought will be sufficient.'" *Id*. quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155,

---

[11] *Mathis*, 2021 U.S. Dis. LEXIS 172515, at *24.

1161 (11th Cir. 1993) (quoting 5 Wright & Miller § 1255). For these reasons, Defendant's motion to dismiss Plaintiffs' claim for the relief of punitive damages must fail.

## CONCLUSION

As set forth above, Defendant's motion to dismiss for lack of personal jurisdiction should be denied. LaSalle Management profited because of its contacts with Harris County and those contacts are related to Plaintiffs' claims. Further, Plaintiffs request that the Court extend the time for service of process on LaSalle Management be extended to January 22, 2025, when service was accomplished. Defendant's motion to dismiss for improper venue should be denied because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district. Finally, Defendant's motion to dismiss for failure to state a claim should be denied because Plaintiffs made sufficient allegations of fact to show their claims are plausible. \

Respectfully submitted,

**THE WEBSTER LAW FIRM**

By: _/s/ Steven E. Aldous_
    JASON C. WEBSTER
    State Bar No. 24033318
    HEIDI O. VICKNAIR
    State Bar No. 24046557
    CHRISTIAN TOVAR
    State Bar No. 24118561
    Steven E. Aldous, _Of Counsel_
    State Bar No. 982100
    24 Greenway Plaza, Suite 600
    Houston, Texas 77046
    713.581.3900 (telephone)
    713.581.3907 (facsimile)
    filing@thewebsterlawfirm.com
    **ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record via ECF in accordance with the Federal Rules of Civil Procedure on March 26, 2025.

                                        */s/ Steven E. Aldous*
                                        Steven E. Aldoous